UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11663-RGS

CHANTHA OUM

v.

WELLS FARGO, N.A., as Trustee for OPTION ONE MORTGAGE LOAN
TRUST 2007-2, ASSET BACKED CERTIFICATES, SERIES 2007-2 and SAND
CANYON CORPORATION

&

CIVIL ACTION NO. 11-11683-RGS

JOSEPH M. O'BRIEN

v.

WELLS FARGO, N.A., as Trustee for OPTION ONE MORTGAGE LOAN
TRUST 2005-2, ASSET BACKED CERTIFICATES, SERIES 2005-2 and SAND
CANYON CORPORATION

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS[1]

February 8, 2012

---

[1] These cases were consolidated for the limited purpose of considering defendants' consolidated motion to dismiss for lack of standing. Defendants in both cases also filed motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

STEARNS, D.J.

These two actions reflect a nearly identical set of facts.  Both cases arise from the allegedly invalid assignment of a mortgage from defendant Sand Canyon Corporation (Sand Canyon) to Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2005-2, Asset Backed Certificate, Series 2005-2, with respect to Joseph O'Brien, and Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2, Asset Backed Certificate, Series 2007-2, with respect to Chantha Oum (collectively, Wells Fargo as Trustee).

Plaintiffs contend that because the assignments of their mortgages were invalid, the foreclosures by Wells Fargo as Trustee on their homes were invalid as well. Plaintiffs ask the court, inter alia, to enjoin Wells Fargo from proceeding with any eviction action (Count I); to quiet title by declaring them the "sole owners" of the properties (Count II); and to grant appropriate relief for Wells Fargo as Trustee's breach of the duty of good faith and reasonable diligence (Count III).

## PROCEDURAL BACKGROUND

Defendant Wells Fargo as Trustee removed Oum's case to federal court on September 20, 2011, and on September 27, 2011, filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  On October 21, 2011, Sand Canyon filed a motion for judgment on the pleadings pursuant to Rule 12(c).  On November 1, 2011, Oum

opposed the motions.  O'Brien's case was removed to federal court on September 21, 2011, by former defendant American Home Mortgage Servicing, Inc. (AHMSI), which then filed a motion to dismiss on September 28, 2011.  On November 22, 2011, Wells Fargo as Trustee also filed a motion to dismiss O'Brien's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

On November 23, 2011, the court held a joint scheduling conference and directed defendants to file a consolidated motion to dismiss on the issue of standing. The court also allowed AHMSI's motion to dismiss with prejudice as the Complaint failed to assert any claim against it.

## FACTUAL BACKGROUND

### Joseph O'Brien

In December of 2004, O'Brien granted a mortgage on a home that he owned in Bellingham, Massachusetts, to Mortgage Solutions, Inc., to secure a $235,800 loan. O'Brien Compl. ¶¶ 16-18, 21.  O'Brien alleges that during the underwriting of the loan, agents of Mortgage Solutions exaggerated his earned income and inflated the fair market value of his home.[2] *Id.* ¶¶ 19-20.

O'Brien contends that Mortgage Solutions was not the actual lender, but was

---

[2] These contentions do not form part of O'Brien's legal claims against defendants.

instead a "middle man" for Option One Mortgage Corporation (Option One).[3] *Id.* ¶ 26.

On November 23, 2009, an assignment of O'Brien's mortgage from "Sand Canyon

f/k/a Option One" to Wells Fargo as Trustee was recorded in the Norfolk County

Registry of Deeds. *Id.* ¶ 27. The assignment was executed by Cheryl Thomas, Vice

President of Sand Canyon, and Chris Pendley, Assistant Secretary of Sand Canyon.

*Id.* ¶ 31. O'Brien notes the absence of any assignment from Option One to Sand

Canyon, asserting that the two companies are not the same entity. *Id.* ¶ 28. On

February 8, 2010, Wells Fargo as Trustee filed a Servicemembers Relief Act complaint

and order of notice in the Middlesex Superior Court. *Id.* ¶ 50. On or about March 28,

2011, Wells Fargo as Trustee foreclosed on O'Brien's property, and recorded a

foreclosure deed granting Wells Fargo title on or about May 23, 2011. *Id.* ¶¶ 51-52.[4]

### *Chantha Oum*

In December of 2006, Oum granted a mortgage to Option One in exchange for

a loan to purchase a residential property in Lowell, Massachusetts. Oum Compl. ¶¶ 14-

---

[3] A document (Exhibit B) appended to the motion to dismiss by former defendant AHMSI purports to be the assignment of the O'Brien mortgage from Mortgage Solutions to Option One in December of 2004.

[4] In its Rule 12(b)(6) motion to dismiss, Wells Fargo as Trustee states that prior to the foreclosure it posted three consecutive notices (on February 1, 8, and 15, 2011) in the Milford Daily News, a newspaper having general circulation in Bellingham, where the property is located, and sent the requisite notices to O'Brien in compliance with Mass. Gen. Laws ch. 244, § 14.

16.  Oum alleges that "during the underwriting of said loan, Option One and its agents stated that the Plaintiff earned more income than what she actually earned"; stated that the fair market value of the property was higher than it truly was; and "induced" Oum to agree to pay interest at 9.8 percent based on representations that she would be able to refinance at a lower fixed rate prior to the January of 2009 balloon adjustment.[5]  *Id.* ¶¶ 17-20.  Oum alleges further that on page six of the mortgage document, where signature lines exist for "witnesses" to the agreement, no witness names appear.  *Id.* ¶ 25.  Moreover, the notary acknowledgment clause "fails to state how or if Chantha Oum was identified to be the person signing the mortgage." *Id.* ¶ 26.[6]

On May, 28, 2010, Sand Canyon assigned Oum's mortgage to Wells Fargo as Trustee.  *Id.* ¶ 40.  On July 27, 2010, the assignment was recorded in the Middlesex County North Registry of Deeds as an assignment of the Oum mortgage from "Sand Canyon Corporation f/k/a Option One" to Wells Fargo as Trustee.  *Id.* ¶ 28.  On September 1, 2010, Wells Fargo as Trustee filed a Servicemembers Relief Act

---

[5] These contentions do not form part of Oum's claims against defendants.

[6] Other factual assertions that also form no part of Oum's claims include: (1) Wells Fargo as Trustee is not a "qualified" trust company, *id.* ¶ 43; (2) "despite the use of the word 'Bank' Wells Fargo was not acting as a 'Bank' in any sense of the word," *id.* ¶ 44; and (3) the mortgage and note were not validly transferred because they were not transferred to the Trust within 90 days of the Trust's creation "as required by law," *id.* ¶ 46.

complaint and order of notice with the Middlesex Superior Court.  *Id.* ¶ 55.  Wells

Fargo as Trustee subsequently conducted a foreclosure auction at which it was the high

bidder.[7]  On February 19, 2011, Oum received a notice to quit from Wells Fargo, giving

her seventy-two hours to leave the property.  *Id.* ¶ 57.

## DISCUSSION

"A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ.

P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim."

*Edelkind v. Fairmont Funding, Ltd.*, 539 F. Supp. 2d 449, 453 (D. Mass. 2008).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court,

absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first.

. . . It is not simply formalistic to decide the jurisdictional issue when the case would

be dismissed in any event for failure to state a claim. Different consequences flow from

dismissals under 12(b)(1) and 12(b)(6): for example, dismissal under the former, not

being on the merits, is without res judicata effect." *Katz v. Pershing, LLC*, __ F. Supp.

2d ___, 2011 WL 3678720, at *1 (D. Mass. Aug. 23, 2011), quoting *Ne. Erectors*

---

[7] Wells Fargo as Trustee states that the foreclosure sale occurred on January 4, 2011, after published notice was given on October 12, 19, and 26, 2010, in the Lowell Sun, a newspaper having general circulation in Lowell.  Oum admits that the notice complied with Mass. Gen. Laws ch. 244, § 14.  *Id.* ¶ 65.  According to its brief, Wells Fargo as Trustee conveyed the property to Wells Fargo for $129,600.

*Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995).

**Standing**

The doctrine of standing addresses whether a particular plaintiff has "such a personal stake in the outcome of [a] controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination. . . ." *Baker v. Carr*, 369 U.S. 186, 204 (1962). The burden of establishing standing rests with the party invoking federal jurisdiction.[8] *Bennett v. Spear*, 520 U.S. 154, 167-168 (1997). There are

> three fundamental requisites of standing that every litigant invoking the jurisdiction of the federal courts must possess: (1) injury-in-fact – an invasion of a legally-protected interest that is both concrete and particularized, and actual or imminent; (2) causation; and (3) redressability. . . . Several prudential considerations also infuse standing determinations. These considerations, which militate against standing, principally concern whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches.

*Benjamin v. Aroostook Med. Ctr., Inc.*, 57 F.3d 101, 104 (1st Cir. 1995) (citations

---

[8] The court recognizes that it was defendants who removed these cases to federal court, and not plaintiffs; nevertheless, plaintiffs must demonstrate standing in order for this court to retain jurisdiction to hear their claims.

omitted).

In contrast to state courts, which may broaden the rules of standing in conformity with their own constitutional limitations, discretionary doctrines, or legislative directives, the federal courts must strictly abide by the prudential constraints of Article III's "case" or "controversy" requirement. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "In part, the extent to which there is a 'real and substantial controversy' is determined under the doctrine of 'standing' by an examination of the sufficiency of the stake of the person making the claim, to ensure the litigant has suffered an actual injury which is fairly traceable to challenged action and likely to be redressed by the judicial relief requested." Laurence H. Tribe, 1 American Constitutional Law § 3-7 at 313 (3d ed. 2000). *See Conservation Law Found. of New England, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir. 1991) ("Congress may not expand by statute the standing limitations imposed upon it by Article III."); *cf. Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989) (a party "may have standing to sue in the Maine state courts, even though it does not meet federal standing requirements, because Maine's standing rules are somewhat more liberal.").

Defendants argue that plaintiffs lack standing to challenge the validity of the assignments Sand Canyon made to Wells Fargo as Trustee of their respective

mortgages because plaintiffs were neither parties to the contractual assignments, nor were they third-party beneficiaries.   Plaintiffs, for their part, argue that because they have a "claim of rightful legal ownership" to the respective properties, they have standing to contest the "cloud" on their wrongly divested title.[9]

In a title theory state like Massachusetts, a mortgagor does not in fact hold legal title to the mortgaged property.  *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 649 (2011).  Rather, the mortgagee holds the legal title.  The mortgagor possesses only an equitable title to the property so long as the debt remains unpaid.  *Id.   See also generally Maglione v. BancBoston Mortg. Corp.*, 29 Mass. App. Ct. 88, 90 (1990) ("Literally, in Massachusetts, the granting of a mortgage vests title in the mortgagee to

_____

[9] Plaintiffs cite *McCartin Leisure Indus., Inc. v. Baker*, 376 Mass. 62, 66 (1978), for the proposition that "[w]hile it is true that a plaintiff seeking to quiet title must possess sufficient legal interest in the property so as to avoid dismissal for lack of standing, a claim of rightful legal ownership satisfies these requirements."  The facts of that case, however, are easily distinguished.  In *McCartin*, a landowner brought an action to quiet title with respect to defendant's profit a prendre to remove sand from the landowner's property.  The defendant challenged the plaintiff's standing because during the course of litigation the landowner's property was foreclosed and purchased by a third-party.  However, after a challenge to the foreclosure proceedings, the plaintiff regained legal title.  In finding that the plaintiff had standing to challenge the profit a prendre, the Supreme Judicial Court noted that: "There is no dispute that the plaintiff held legal title to the servient estate both when the action was commenced and when the master filed his report. There is also no dispute that, by the time the master heard evidence concerning the various changes in the title, the plaintiff had regained ownership." *Id.*

the land placed as security for the underlying debt.  The mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains.").  Thus, a quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud.[10]

Here, plaintiffs claim to legal title is based on the purported invalidity of the Sand Canyon assignments.  An assignment is a contract, *Spellman v. Shawmut Woodworking & Supply, Inc.*, 445 Mass. 675, 681 (2006), and the fact that what was assigned was a mortgage does not alter its legal character.  *See Brand v. Suburban Land Co.*, 299 Mass. 336, 336-337 (1938).  Defendants argue (correctly) that for a plaintiff to prosecute an action based on a contract, he or she must either be a party to the contract at issue or an intended third-party beneficiary.  *Edelkind*, 539 F. Supp. 2d at 453-454; *see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass.

---

[10] A plaintiff seeking to quiet title in Massachusetts pursuant to Mass. Gen. Laws ch. 240, § 10, must show both a right to possession and legal title to the property.  *See Bevilacqua v. Rodriguez*, 460 Mass. 762, 767 n.5 (2011), quoting *Sheriff's Meadow Found., Inc. v. Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 269 (1987) ("[A] quiet title action requires the plaintiff 'not merely to demonstrate better title to the locus than the defendants possess, but requires the plaintiff to prove sufficient title to succeed in its action.'").  It is, however, open to a mortgagor who remains in possession after a foreclosure sale to challenge the validity of the foreclosure sale-purchaser's title to the property as a defense to a summary process eviction proceeding in state court.  *See Bank of New York v. Bailey*, 460 Mass. 327, 333-334 (2011).

10

458, 464 (2009).   To qualify as a third-party beneficiary, plaintiffs must show that the assignor and assignee intended to give him or her "the benefit of the promised performance." *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 366 (1997).   "The intent must be clear and definite."   *Id.* at 366-367.   "Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract." *Harvard Law Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll.*, 413 Mass. 66, 71 (1992).   Here, as a matter of longstanding commercial practice, a mortgagor is not an intended beneficiary of an assignment of a mortgage, nor have plaintiffs alleged any facts that would make them an exception to the rule.   Thus, plaintiffs lack standing to challenge the validity of the assignments.[11]

In making this determination, this court joins the company of numerous other sessions in this district that have decided the same issue.   *See Wenzel v. Sand Canyon*

---

[11] To the extent that plaintiffs base their standing on the Massachusetts Declaratory Judgment Statute, Mass. Gen. Laws ch. 231A, § 1 (and even assuming that a federal court's jurisdiction can be defined by a state statute), they fare no better. *See Pratt v. City of Boston*, 396 Mass. 37, 43 (1985) ("'Even if there is an actual controversy, the particular plaintiff must demonstrate the requisite legal standing to secure its resolution.' *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. [Comm'r] of Ins.*, 373 Mass. 290, 292 (1977). '[T]he requirement of 'standing' is not avoided by a prayer for declaratory relief.' *Doe v. The Governor*, 381 Mass. [702, 704 (1980)]. [Mass. Gen. Laws ch.] 231A, therefore, does not in and of itself provide the plaintiffs with the 'standing' required to maintain this action.").

*Corp.*, ___ F. Supp. 2d ___, 2012 WL 219371, at *11 (D. Mass. Jan. 5, 2012) (Boal,

M.J.) (plaintiffs have no standing to seek a declaration that the assignment of their

mortgage was invalid); *Culhane v. Aurora Loan Servs. of Nebraska*, ___ F. Supp. 2d

___, 2011 WL 5925525, at *19 (D. Mass. Nov. 28, 2011) (Young, J.)

("Homeowner-mortgagors, as non-parties to the assignments of their mortgages, are left

with little recourse where they suspect impropriety."); *Juarez v. U.S. Bank Nat'l Ass'n*

*ex rel. Holders of the Asset Backed Sec. Corp. Home Equity Loan Trust, Series NC*

*2005-HE8*, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011) (Casper, J.) (plaintiff

"does not have a legally protected interest in the assignment of the mortgage to bring

an action arising under the [Pooling Servicer Agreement]."); *Peterson v. GMAC*

*Mortg., LLC*, 2011 WL 5075613, at *4 (D. Mass. Oct. 25, 2011) (Zobel, J.)

("[P]laintiffs have no legally protected interest in the Mortgage assignment from MERS

to GMAC and therefore lack standing to challenge it."); *Kiah v. Aurora Loan Servs.,*

*LLC*, 2011 WL 841282, at *6 (D. Mass. Mar. 4, 2011) (Saylor, J.) ("[I]t is difficult to

see why plaintiff has standing to assert [a claim that the assignment of his mortgage

was defective].").[12]

_____

[12] The same near uniformity of opinion can be found in the decisions of
extraterritorial courts as well. *See Bridge v. Aames Capital Corp.*, 2010 WL 3834059,
at *3 (N. D. Ohio Sept. 29, 2010) (noting that "[c]ourts have routinely found that a
debtor may not challenge an assignment between an assignor and assignee," and citing

Plaintiffs insist, however, that the decision of the Supreme Judicial Court in

*Ibanez* is to the contrary.  In *Ibanez*, the Court observed that

> [o]ne of the terms of the power of sale that must be strictly adhered to is
> the restriction on who is entitled to foreclose. The "statutory power of
> sale" can be exercised by "the mortgagee or his executors, administrators,
> successors or assigns." [Mass. Gen. Laws ch.] 183, § 21. Under [Mass.
> Gen. Laws ch.] 244, § 14, "[t]he mortgagee or person having his estate
> in the land mortgaged, or a person authorized by the power of sale, or the
> attorney duly authorized by a writing under seal, or the legal guardian or
> conservator of such mortgagee or person acting in the name of such
> mortgagee or person" is empowered to exercise the statutory power of
> sale. Any effort to foreclose by a party lacking "jurisdiction and
> authority" to carry out a foreclosure under these statutes is void.  *Chace
> v. Morse*, 189 Mass. 559, 561 (1905), citing *Moore v. Dick*, 187 Mass.
> 207, 211 (1905).  *See Davenport v. HSBC Bank USA*, 275 Mich. App.
> 344, 347-348 (2007) (attempt to foreclose by party that had not yet been

---

the following cases from other Circuits for the same  proposition:  *Livonia Prop.
Holdings v. Farmington Road Holdings*, 717 F. Supp. 2d 724, 735-736 (E. D. Mich.
2010); *Ifert v. Miller*, 138  B.R. 159, 166 n.13 (Bankr. E. D. Pa. 1992); *In re Cook*,
457 F.3d 561, 567 (6th Cir. 2006); *Liu v. T & H Mack, Inc.*,  191 F.3d 790, 797-798
(7th Cir. 1999); *Blackford v. Westchester Fire Ins. Co.*, 101 F. 90, 91 (8th Cir. 1900)).
The major treatise on this topic also agrees.  *See* Richard A. Lord, 29 Williston on
Contracts § 74:50 (4th ed. 2010) ("[T]he debtor has no legal defense [based on
invalidity of the assignment] . . . for it cannot be assumed that the assignee is desirous
of avoiding the assignment.").  *But see Rosa v. Mortg. Elec. Sys., Inc.*, ___ F. Supp.
2d ___, 2011 WL 5223349, at *9 n.5 (D. Mass. Sept. 29, 2011) (Saris, J.) ("The
Defendants have also raised the question of the Plaintiffs' standing to challenge the
validity of the assignment at issue here.  Under Massachusetts law, '[a]ny effort to
foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure . . .
is void.' [*Ibanez*,] 458 Mass. [at] 647 (2011).  The Plaintiffs appear to have standing
under this principle, because the allegations, if proven, would render the foreclosure
sale void, under Massachusetts law.") The *Rosa* decision is, at best as I can determine,
an outlier on this issue.

assigned mortgage results in "structural defect that goes to the very heart of defendant's ability to foreclose by advertisement," and renders foreclosure sale void).

*Ibanez*, 458 Mass. at 647.[13]   Plaintiffs argue that because the assignments were defective, the foreclosures were void from the beginning "and may not be enforced." *See RP Mach. Enter., Inc. v. UPS Capital Bus. Credit*, 2007 WL 2475871, at \*4 (D. Mass. Aug. 29, 2007), quoting *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 54 (1991) ("It is well-established under Massachusetts law that a 'contract which is void ab initio, or void from the beginning, may not be enforced.'").

Operating from this premise, plaintiffs maintain that they are able to circumvent the standing barrier to a challenge of the assignments.  The logic is flawed.  Even assuming that plaintiffs have standing, and further assuming that the assignments were invalid (rendering the foreclosures void),  plaintiffs would still be unable to maintain

---

[13] In *Peterson*, Judge Zobel distinguished *Ibanez* on facts that are very similar to those here.  Judge Zobel noted that in *Ibanez*, it was the banks that sought a declaratory judgment acknowledging that they held clear title to the two properties on which they had foreclosed.  "Importantly, in *Ibanez*, the land court was specifically tasked with evaluating the sufficiency of the assignment process – the banks, as foreclosing parties and actual parties to the mortgage assignments had standing to seek court review of the validity of the assignment process.  I do not read *Ibanez* to provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them any interests or rights."  2011 WL 5075613, at \*3-4.

a quiet title action because the underlying debts would remain in force.[14]  Construing

the assignments as invalid, and the foreclosures as void, would have an impact only on

the relationship between the parties to the assignment contract –  Sand Canyon and

Wells Fargo as Trustee.  Plaintiffs' proposed remedy would simply return Sand Canyon

and Wells Fargo as Trustee to the position each was in prior to the act of assignment.

*See Massachusetts Mun. Wholesale Elec. Co.*, 411 Mass. at 55 ("When adjudicating

rights between parties to a contract that is void ab initio, courts treat the contract as if

it had never been made.").  The remedy would thus have no effect on plaintiffs as

defaulting mortgagors.  The likely outcome would be the issuance of confirmatory

assignments by Sand Canyon, and, if necessary, the re-foreclosure (and re-purchase)

of the properties by Wells Fargo as Trustee.  *See Kiah*, 2011 WL 841282, at *7 ("To

the extent the assignment is defective, *Ibanez* would require, at most, that a

confirmatory assignment be executed and recorded.").

This result bolsters the argument that the Supreme Judicial Court did not intend

to "give[] Massachusetts mortgagors a legally protected interest in assignments to

which they are not a party . . . ."  *Peterson*, 2011 WL 5075613, at *3.  *See Bridge*,

2010 WL 3834059, at *5 ("As Defendant asserts, regardless of the outcome of this

---

[14] Plaintiffs do not allege that they have redeemed their mortgages or that they are in a position to do so.

litigation, Plaintiff is still in default on her mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between Aames and Deutsche Bank nor is there any likelihood that Plaintiff's requested relief will prevent her alleged injury."); *In re Halabi*, 184 F.3d 1335, 1337-1338 (11th Cir. 1999) (rejecting a bankruptcy trustee's challenge to the assignment of a perfected mortgage, holding that the transaction "does not involve a 'transfer of the property of the debtor' that would activate the Trustee's strong-arm powers under [11 U.S.C.] § 544," and explaining that "[f]rom the point of view of the mortgagor or someone standing in his shoes, *a subsequent assignment of the mortgagee's interest . . . does not change the nature of the interest of the mortgagor* or someone claiming under him.") (emphasis added). Because plaintiffs lack standing to challenge the validity of the assignments of their mortgages, their claims must be dismissed.[15]

---

[15] Plaintiffs' claims rest on the theory that the Sand Canyon representatives executing the assignments were without authority to do so, thus rendering the assignments invalid. This contention appears to have no merit. *See Aliberti v. GMAC Mortg., LLC*, 779 F. Supp. 2d 242, 249 (D. Mass. 2011); *see also Kiah*, 2011 WL 841282, at *7 (D. Mass. Mar. 4, 2011); *In re Marron*, 455 B.R. 1, 8 (Bankr. D. Mass. 2011) ("[U]nder Massachusetts law, an assignment of a mortgage is effective without the need to independently establish the authority of the assignor to make the assignment."). "A mortgage assignment is valid as long as it complies with the requirements of Mass. Gen. Laws. ch. 183, § 54B." *Rosa*, 2011 WL 5223349, at *4, citing *Aliberti*, 779 F. Supp. 2d at 249; *see also Kiah*, 2011 WL 841282, at *7. "Pursuant to Mass. Gen. Laws ch. 183, § 54B, an assignment executed before a notary public by a person purporting to hold the position of vice president of the entity holding

ORDER

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is <u>ALLOWED</u>. The Clerk will remand plaintiffs' actions to the state court in which they were initially filed and close the federal cases.[16]

SO ORDERED.

/s/ Richard G. Stearns

---

such mortgage shall be binding upon such entity." *Aliberti*, 779 F. Supp. 2d at 249. Plaintiffs also question the corporate identity of Sand Canyon f/k/a Option One, arguing that defendants have not demonstrated a complete chain of title from the original lenders through Wells Fargo as Trustee. In response to the court's Order of November 23, 2011, Sand Canyon submitted an affidavit from Brian McConnell, vice-president of custodial and transactional management at Sand Canyon attesting that "on personal knowledge or on the basis of my review of business records of Sand Canyon," Option One amended its articles of corporation to reflect a corporate name change to Sand Canyon. McConnell Aff. ¶¶ 3, 6, 7 (Dkt # 19, Ex. 1). Thus, plaintiffs' allegations appear to be without merit. Because these arguments arise in the context of the motion to dismiss under Rule 12(b)(6), the court need not address them on the merits given its holding that plaintiffs lack Article III standing.

[16] If the court determines that it has no jurisdiction over a removed case, it has no power to enter a dismissal with prejudice. *Mills v. Harmon Law Offices*, 344 F.3d 42, 45 (1st Cir. 2003). The only proper recourse is a remand to the state court. *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 108-109 (1st Cir. 2007). *See Maine Ass'n of Interdependent Neighborhoods*, 876 F.2d at 1054 ("[T]he district court erred in departing from the literal words of [28 U.S.C.] § 1447(c), which, on their face, give it no discretion to dismiss rather than remand an action. And, we are unwilling to read such discretion into the statute, here, because we cannot say with absolute certainty that remand would prove futile. It is conceivable, though unlikely, that [plaintiff] will succeed in finding a state forum for its claims.").

_____

UNITED STATES DISTRICT JUDGE